Georgiana JUNGELS, Plaintiff,

v.

STATE UNIVERSITY COLLEGE OF NEW YORK, State University College at Buffalo, D. Bruce Johnstone, Richard A. Wiesen, Gerald F. Accurso, Gisele C. Feal, Charles L. Deihl, Layman H. Jones, Jr., and John R. Rogers, Defendants.

No. 87–CV–1015C.

United States District Court,
W.D. New York.

April 2, 1996.

Sheila G. Graziano, and Dennis P. O'Keefe, Buffalo, New York, for Plaintiff.

Dennis C. Vacco, Attorney General of the State of New York (William D. Maldovan, Assistant Attorney General, of Counsel), Buffalo, New York, for Defendants.

## DECISION and ORDER

CURTIN, District Judge.

Plaintiff Georgiana Jungels, an Associate Professor at the State University of New York College at Buffalo ("SUNYCB"), filed this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, on July 31, 1987, alleging discrimination on the basis of age by SUNYCB, the State University of New York ("SUNY"), the State of New York, and various individual defendants. Item 1. On June 14, 1988, she filed an amended complaint, setting forth additional claims of age and sex discrimination and retaliation under (1) Title VII; (2) the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; (3) 42 U.S.C. § 1983; and (4) New York Human Rights Law (Executive Law § 290 *et seq.*). Item 15. Following extended discovery and settlement discussions, a tentative trial date was set for February 12, 1996. Item 44. With the court's consent (Item 44), the plaintiff filed a second amended complaint on November 15, 1995. Item 45. This complaint added certain further claims under New York State common law and the New York State Constitution. *Id.* at 16.

On January 5, 1996, the court issued an order setting a trial date of February 5, 1996. Item 47. On January 22, the defendants filed a motion to dismiss certain of the plaintiff's claims, accompanied by an extensive memorandum of law. Items 50 and 51. On January 25, 1996, the court informed the parties that it would not be possible to move ahead with the trial until April. The plaintiff was given until February 12, 1996, to respond to the defendants' motion to dismiss. She did so. Items 52–54. The defendants submitted a reply memorandum. Item 56. Oral argument was held on February 26, 1996.

## BACKGROUND

Plaintiff Georgiana Jungels took up an appointment as an Assistant Professor at SU-

NYCB, in the Art Education Department, on or about September 1, 1974. She was promoted to the rank of Associate Professor as of September 1, 1980, and was granted tenure as of September 1, 1981. In the ensuing years, relationships between Dr. Jungels and certain SUNYCB officials deteriorated. Dr. Jungels filed various union grievances, and a series of charges of age and sex discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). She filed this lawsuit on July 31, 1987. On December 11, 1989, she was placed on leave without pay. She was reinstated on or about September 14, 1992, but was again suspended on September 28, 1992. On September 2, 1993, she was notified that she had been terminated.

In their motion to dismiss, the defendants raise a number of legal questions, the resolution of which will narrow the issues to be determined at trial. The plaintiff has requested that the motion be struck in its entirety, based upon the defendants' failure to bring an appropriate motion at any earlier time in this litigation. Item 54. The filing of a motion to dismiss only one week prior to trial is, she maintains, prejudicial. *Id.*, ¶ 4. While the court has sympathy with the plaintiff's position, it would be helpful to resolve the questions raised by the defendants at this time, so that the issues to be determined at trial are more clearly defined.

### DISCUSSION

#### 1. Title VII Claims Against Individual Defendants

■ The defendants first argue that all claims under Title VII against the individual defendants should be dismissed, because employers' agents may not be held personally liable under Title VII. Item 51, pp. 2–3. They cite *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir.1995). The plaintiff maintains that in *Tomka*, the Second Circuit's discussion was limited to claims of hostile work environment sex discrimination, and its ruling on the question of personal liability should not be extended to other Title VII

cases. Item 52, pp. 5–6. She argues further that in the event that the court decides that the individual defendants cannot be held liable under Title VII, they should remain charged in their official capacities as agents of the institutional defendants. *Id.* at 6–7.

It is clear that on the issue of personal liability of employers' agents under Title VII, the Second Circuit's reasoning in *Tomka* applies not only to hostile environment sex discrimination cases, but to all Title VII actions. *See Tomka v. Seiler Corp.*, 66 F.3d at 1313–17. "[I]ndividual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII." *Id.* at 1313. All claims under Title VII against defendants Johnstone, Wiesen, Accurso, Feal, Deihl, Jones, and Rogers in their capacities as individuals must therefore be dismissed.

"[T]he proper method for a plaintiff to recover under Title VII is by suing the employer, either by naming the supervisory employees as agents of the employer or by naming the employer directly." *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir.1991). Here, the defendants do not challenge the application of the plaintiff's Title VII claims to SUNY and SUNYCB as her employers. Item 51, p. 3. There is no need, therefore, to retain the named individuals as Title VII defendants in their capacities as agents of the institutional defendants, as the plaintiff suggests.

#### 2. ADEA Claims Against Individual Defendants

■ The defendants maintain that all claims under the ADEA against the individual defendants should be dismissed, arguing that the Second Circuit's reasoning in *Tomka* should be extended to ADEA claims. Item 51, pp. 4–5. They point out that the design and objectives of Title VII and the ADEA are similar, that under both statutes only "employers" are subject to civil liability, and that both use essentially the same definition of "employer." *Id.* at 4.[1] They note also

---

1. Under Title VII, an "employer" is defined, in relevant part, as "a person engaged in an industry affecting commerce who has fifteen or more

employees ... and any agent of such a person...." 42 U.S.C. § 2000e(b). The ADEA uses, in relevant part, the same definition, except

that although the Second Circuit has not ruled on the issue of personal liability of employers' agents under the ADEA, other circuits, and at least one court in this circuit, have rejected it. *Id.* at 5 (citing *Birkbeck v. Marvel Lighting Corp.,* 30 F.3d 507 (4th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 666, 130 L.Ed.2d 600 (1994); *Miller v. Maxwell's International Inc.,* 991 F.2d 583, 587–88 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994); *Smith v. Lomax,* 45 F.3d 402, 403–04 (11th Cir.1995); and *Falbaum v. Pomerantz,* 891 F.Supp. 986, 989 (S.D.N.Y.1995)). In response, the plaintiff cites only a single case, *Bostick v. Rappleyea,* 629 F.Supp. 1328, 1334 (N.D.N.Y.1985), *aff'd,* 907 F.2d 144 (2d Cir. 1990), which applied a more liberal interpretation of the term "employer" under Title VII.

In light of the Second Circuit's reasoning in *Tomka,* and the weight of authority finding no personal liability for employers' agents under the ADEA, the court is persuaded that the individual defendants in this case may not be held personally liable under the ADEA. All claims under the ADEA against defendants Johnstone, Wiesen, Accurso, Feal, Deihl, Jones, and Rogers in their individual capacities must therefore be dismissed.

### 3. Subject Matter Jurisdiction Over State Law Claims

The defendants next argue that under the Eleventh Amendment, this court lacks jurisdiction to adjudicate the plaintiff's New York State Human Rights Law (HRL) claims and her state law claims based upon allegations of breach of contract and fraud. To the extent that the claims are leveled against the State, they maintain, they are directly precluded by the Eleventh Amendment. To the extent that they are leveled against the individual defendants, the relief sought can be afforded only by the State itself, or would have a direct impact on the State. The claims against the individual defendants are,

in effect, claims against the State, and are therefore barred. Item 51, pp. 5–8.

The plaintiff responds (1) that the State waived its jurisdiction over her HRL claims when the New York State Division of Human Rights (NYSDHR) agreed, at the request of the EEOC, to allow the EEOC to take responsibility for investigating her complaints of discrimination; (2) that the State has been on notice since March 1985, or shortly thereafter, that the HRL complaints were being pursued through federal, not State, channels, including this action, and it should be estopped from asserting Eleventh Amendment immunity at this late stage, based on laches; (3) that prospective relief against the State is not barred under the Eleventh Amendment; (4) that even if the Eleventh Amendment bars HRL claims against SUNY, the HRL charges against the individual defendants in their individual capacities should stand; and (5) that there is an issue of fact as to whether, for purposes of the Eleventh Amendment, SUNY is identical to the State, since less than half of the funding for SUNY is derived from State funds. Item 52, pp. 8–11.

 The Supreme Court has interpreted the Eleventh Amendment as barring suits in federal court by citizens against their own states, absent either waiver of immunity and consent to suit by the state, or abrogation of constitutional immunity by Congress. *See Welch v. Texas Department of Highways and Public Transportation,* 483 U.S. 468, 472, 107 S.Ct. 2941, 2945, 97 L.Ed.2d 389 (1987); *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 237–40, 105 S.Ct. 3142, 3145–46, 87 L.Ed.2d 171 (1985); *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 97–100, 104 S.Ct. 900, 906–08, 79 L.Ed.2d 67 (1984). Generally, a suit against a state official is regarded as one against the state itself, when the relief sought nominally against the official would operate against state. *Pennhurst State School and Hospital v. Halderman,* 465 U.S. at 101, 104 S.Ct. at 908. Notwithstanding the Eleventh Amendment, a state official acting in his official capacity may be sued in federal court to

that liability is limited to employers with "twenty or more employees ... [and] any agent of such a

person." 29 U.S.C. § 630(b).

enjoin conduct that violates the federal constitution. *Id.* at 102–03, 104 S.Ct. at 909; *see also, Dube v. State University of New York,* 900 F.2d 587, 595 (2d Cir.1990), *cert. denied,* 501 U.S. 1211, 111 S.Ct. 2814, 115 L.Ed.2d 986 (1991). However, a federal court may not grant relief, whether prospective or retroactive, against state officials on the basis of state law violations. *Pennhurst State School and Hospital v. Halderman,* 465 U.S. at 106, 104 S.Ct. at 911; *Dube v. State University of New York,* 900 F.2d at 595.

### a. *The State Defendants*

■ For purposes of the Eleventh Amendment, "SUNY 'is an integral part of the government of the State [of New York] and when it is sued the State is the real party.'" *Dube v. State University of New York,* 900 F.2d at 594 (quoting *State University of New York v. Syracuse University,* 285 A.D. 59, 61, 135 N.Y.S.2d 539, 542 (3d Dept.1954)). The same has been held to be true for various SUNY colleges. *Fox v. Board of Trustees of the State University of New York,* 649 F.Supp. 1393, 1397 (N.D.N.Y.1986), *rev'd on other grounds,* 841 F.2d 1207 (2d Cir.1988), *rev'd,* 492 U.S. 469, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989). Therefore, absent consent to suit in federal court on the part of the State, this court has no jurisdiction over the plaintiff's state law claims against SUNY and SUNYCB.

■ A federal court should find that a state has consented to suit in federal court and waived its protection under the Eleventh Amendment "only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'" *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 1361, 39 L.Ed.2d 662 (1974) (quoting *Murray v. Wilson Distilling Co.,* 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909)). There is no basis for finding such a waiver in the text of the HRL. *Arroyo v. New York State Insurance Department,* 1993 WL 248210 (S.D.N.Y.); *Moche v. City University of New York,* 781 F.Supp. 160, 167–69 (E.D.N.Y.1992), *aff'd,* 999 F.2d 538 (2d Cir.1993); *Cassells v. University Hospital at Stony Brook,* 740 F.Supp. 143,

147–48 (E.D.N.Y.1990). Furthermore, the plaintiff offers no case law support for her contentions that (1) the State waived its jurisdiction over her HRL claims when the NYSDHR allowed the EEOC to take responsibility for investigating her complaints, and (2) the State should be estopped from asserting its Eleventh Amendment defense at this time. The court finds no merit to those contentions. The plaintiff's claims under the HRL against SUNY and SUNYCB, and against the individual defendants in their official capacities, must therefore be dismissed.

Similarly, the plaintiff's state law tort and breach of contract claims, and her state law due process claim based upon breach of contract, against the State defendants (and against the individual defendants acting in their official capacities), must be dismissed. *See Mascheroni v. Board of Regents of the University of California,* 28 F.3d 1554, 1557–60 (10th Cir.1994).

### b. *The Individual Defendants*

■ "The Eleventh Amendment ... provides no immunity for state officials sued in their personal capacities." *Dube v. State University of New York,* 900 F.2d at 595. Thus, to the extent that the plaintiff has asserted state law claims against the individual defendants in their personal capacities, *see infra,* such claims cannot be dismissed on Eleventh Amendment grounds.

### 4. *Claims under 42 U.S.C. § 1983*

The defendants contend next that the plaintiff's claims under 42 U.S.C. § 1983 should be dismissed because they are based upon the same allegations that are the foundation for her Title VII and ADEA claims. Item 51, pp. 9–10. No independent basis for the § 1983 claims has been identified, they argue, and "[s]ince both Title VII and the ADEA provide for their own enforcement, a concurrent § 1983 claim is precluded unless it is based on substantive rights distinct from those established by Title VII and the ADEA." *Id.* at 9 (citing *Carrero v. New York City Housing Authority,* 890 F.2d 569, 581 (2d Cir.1989)). The plaintiff responds that in her complaint, she has clearly alleged violations of her rights under the First, Fifth,

and Fourteenth Amendments that properly form the basis for her § 1983 claims. Item 52, pp. 11–13.

■■■ It is well established in the Second Circuit that " 'a § 1983 claim is not precluded by a concurrent Title VII claim, when the former is based on substantive rights distinct from Title VII.' " *Saulpaugh v. Monroe Community Hospital,* 4 F.3d 134, 143 (2d Cir.1993) (quoting *Carrero v. New York City Housing Authority,* 890 F.2d at 576), *cert. denied,* —— U.S. ——, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994); *see also, Gierlinger v. New York State Police,* 15 F.3d 32, 34 (2d Cir.1994). "A plaintiff cannot use Section 1983 to gain perceived advantages not available to a Title VII claimant, but [she] can assert a claim under Section 1983 if some law other than Title VII is the source of the right alleged to have been denied." *Saulpaugh v. Monroe Community Hospital,* 4 F.3d at 143 (citations omitted); *see also, Moche v. City University of New York,* 781 F.Supp. at 167–69 (partial foreclosure of § 1983 claims by Title VII in a case involving allegations of discriminatory conduct in an academic setting).

■■■ In contrast, a number of courts have held that the ADEA provides the exclusive federal remedy for claims of age discrimination in employment, precluding such claims under § 1983. The Second Circuit has not yet addressed this issue. The leading Court of Appeals case is *Zombro v. Baltimore City Police Department,* 868 F.2d 1364 (4th Cir.), *cert. denied,* 493 U.S. 850, 110 S.Ct. 147, 107 L.Ed.2d 106 (1989), in which a Fourth Circuit panel held, in a split decision, that actions under § 1983 based on claims of age discrimination are foreclosed by the ADEA. *Id.* at 1369. At least two district courts in this circuit have followed the *Zombro* majority decision. *See Gregor v. Derwinski,* 911 F.Supp. 643 (W.D.N.Y.1996); *Reale v. Jenkins,* 1993 WL 37091 (S.D.N.Y.). *See also, Tranello v. Frey,* 758 F.Supp. 841, 850–51, n. 3 (W.D.N.Y.1991) (stating that the ADEA "provides the exclusive remedy for age discrimination claims," without reference to *Zombro), aff'd,* 962 F.2d 244 (2d Cir.), *cert. denied,* 506 U.S. 1034, 113 S.Ct. 813, 121 L.Ed.2d 686 (1992). However, the issue has recently been reconsidered in great detail in *Mummelthie v. City of Mason City, Iowa,* 873 F.Supp. 1293, 1312–29 (N.D.Iowa 1995). In *Mummelthie,* the court rejected the *Zombro* majority's analysis and concluded that "where the facts giving rise to [an] ADEA violation also give rise to a violation of an independent federal right, secured by statute or the Constitution, a plaintiff may pursue either the ADEA or § 1983 remedy or both." *Id.* at 1328. In view of the court's reasoning in *Mummelthie,* and of the rationale behind the Second Circuit's holding in *Saulpaugh* that claims under § 1983 are not precluded by concurrent Title VII claims, this court finds that the ADEA does not preempt concurrent claims of age discrimination in employment under § 1983, when the § 1983 claims are based on substantive rights distinct from those established under the ADEA.

Here, the plaintiff has alleged that the defendants have violated her rights under the First, Fifth, and Fourteenth Amendments. To the extent that her allegations describe cognizable violations of those Constitutional provisions, distinct from rights exclusively protected by Title VII or the ADEA, her § 1983 claims may stand.

■■■ Neither the defendants nor the plaintiff have provided the court with any legal analysis of whether the factual allegations in the plaintiff's second amended complaint are sufficient to sustain § 1983 claims based upon violations of the First, Fifth, and Fourteenth Amendments. A review of the original, first amended, and second amended complaints, however, indicates that from at least the time that the first amended complaint was filed in June 1988, the defendants have been on sufficient notice that the plaintiff has been seeking to pursue equal protection, freedom of speech, and due process claims under § 1983. The defendants have had ample time for discovery, and have brought no motion for summary judgment. The court is not prepared to dismiss the § 1983 claims on a Rule 12(b)(6) motion at this time. The plaintiff must be allowed to bring those claims to trial.

Having said that, the court notes that the Eleventh Amendment bars the § 1983 claims against SUNY and SUNYCB. *See Dube v. State University of New York*, 900 F.2d at 594–95.[2] The claims against those defendants must be dismissed. However, insofar as the plaintiff has brought § 1983 claims for prospective relief against the individual defendants in their official capacities, or has stated claims against them personally, those claims may remain. *Id.* at 595.

### 5. Human Rights Law Claims Against the Individual Defendants

The defendants contend that the plaintiff has failed to state a claim under the HRL against all but one of the individual defendants, former President Johnstone, in this case. Item 51, pp. 9–12. The plaintiff concedes that she has no claim under the HRL against one of them, Associate Vice–President Feal, and wishes to withdraw that claim. However, she maintains that she has adequately stated a claim against the others. Item 52, pp. 13–15.

The HRL prohibits, *inter alia*, "employers" from engaging in a wide range of discriminatory practices. N.Y.Exec.Law § 296. Based upon the definition of "employer" in N.Y.Exec.Law § 292(5), the New York Court of Appeals has held that "an employee is not individually subject to suit under § 296 *as an employer* 'if he is not shown to have any ownership interest or any power to do more than carry out personnel decisions made by others.' " *Tomka v. Seiler Corp.*, 66 F.3d at 1317 (quoting *Patrowich v. Chemical Bank*, 63 N.Y.2d 541, 542, 483 N.Y.S.2d 659, 473 N.E.2d 11 (1984)) (emphasis added). Focusing on this language, the individual defendants in this case, with the exception of Johnstone, argue that the HRL claims against them must be dismissed because the plaintiff has not alleged that any of them possessed the requisite authority to carry out the adverse personnel decisions about which she complains. Item 51, pp. 9–11. The plaintiff responds that they did indeed have control over the personal decisions concern-

ing her, since "[b]y nature of the chain of command and functioning of SUNY, the progressive levels of supervisory personnel, from department chairman on up, had direct impact on personnel policies [and] actions as they were applied to Plaintiff." Item 52, p. 14.

The plaintiff also cites § 296(6) of the HRL, which makes it unlawful "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." N.Y.Exec. Law § 296(6). In *Tomka*, the Second Circuit referred with approval to several cases holding that, based upon this language, "a defendant who actually participates in the conduct giving rise to a discrimination claim may be held personally liable under the HRL." *Tomka v. Seiler Corp.*, 66 F.3d at 1317. In the present case, the plaintiff maintains that she has adequately alleged participation of the individual defendants, with the exception of Feal, in the discriminatory acts about which she complains. Item 52, pp. 13–15.

The second amended complaint states the plaintiff's HRL claims against the individual defendants in only very general terms, and does not set forth the legal theory or theories under which the plaintiff believes those defendants may be held liable under the HRL. Nevertheless, upon review of the original, first amended, and second amended complaints, the court is satisfied that from the time of filing of the first amended complaint in June 1988, the individual defendants have been on sufficient notice that the plaintiff has been seeking to pursue HRL claims against them, based upon their capacity to make personnel decisions concerning her, and/or upon their participation in acts of discrimination. Again, the defendants have had much time for discovery, and have brought no summary judgment motion. The court will not dismiss the HRL claims against the individual defendants on a Rule 12(b)(6) motion at this time.

---

**2.** "A federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment." *Pennhurst State School and Hospital v. Halder-*

*man*, 465 U.S. at 121, 104 S.Ct. at 919; *see Mascheroni v. Board Regents of the University of California*, 28 F.3d at 1558.

Pursuant to the plaintiff's request that she be allowed to withdraw her HRL claim against defendant Feal, that claim is dismissed with prejudice.

### 6. State Law Due Process Claim Against Individual Defendants Based Upon Breach of Contract

 The second amended complaint alleges that by denying the plaintiff the use of accrued sick leave, the defendants breached the contract (collective bargaining agreement, cba) between the State and the plaintiff's union, thereby depriving the plaintiff of her property rights under the New York State Constitution, without due process. Item 45, ¶ 48(1). The defendants maintain that the individual defendants were not alleged to be (and were not) parties to the cba, and so any claims against those individuals based upon a breach of contract theory must be dismissed. Item 51, pp. 12–13.

The plaintiff responds that the individual defendants were assigned by the State to implement the cba, that under the cba they had authority to make decisions on the employment conditions of employees, including the plaintiff, and they exercised that authority in their dealings with the plaintiff. They may therefore be held individually liable for any breach of contract resulting from their actions. The plaintiff cites no case law authority in support of this position. Item 52, pp. 15–16.

There is no merit to the plaintiff's argument. "It is hornbook law that a non-signatory to a contract cannot be named as a defendant in a breach of contract action unless it has thereafter assumed or been assigned the contract." *Crabtree v. Tristar Automotive Group, Inc.*, 776 F.Supp. 155, 166 (S.D.N.Y.1991). The plaintiff's allegations of breach of contract in this case might involve the individual defendants only insofar as those individuals affected the plaintiff's contractual rights under the cba in their official capacities as agents of SUNY and SUNYCB, and not in their personal capacities. And as the court has already held, *supra*, the plaintiff's breach of contract and related state law due process claims against the individual defendants, in their official ca-

pacities, must be dismissed for lack of jurisdiction under the Eleventh Amendment.

### 7. Breach of Contract Claim: Res Judicata and Collateral Estoppel

Since the plaintiff's breach of contract claim must be dismissed for lack of jurisdiction under the Eleventh Amendment, as discussed above, it is unnecessary to reach the defendants' *res judicata* and *collateral estoppel* arguments.

### 8. Intentional Infliction of Emotional Distress

In paragraph 48(3) of her second amended complaint, the plaintiff alleges that:

> By continuous harm to her reputation and status, Defendants did and continue to cause Plaintiff extreme emotional distress thus depriving her of person and property all in contravention of the New York State Constitution.

Item 45, ¶ 48(3). No such claim was included in her original or first amended complaints. The defendants characterize the claim, quite reasonably, as one for intentional infliction of emotional distress, and have moved to dismiss it, (1) for failure to state a claim (Item 51, pp. 15–17), and (2) because any such claim would be time-barred (*id.* at 17–18).

 A claim of intentional infliction of emotional distress under New York law "has four elements: (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Bender v. City of New York*, 78 F.3d 787, 790 (2d 1996) (citing *Howell v. New York Post Co., Inc.*, 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 353, 612 N.E.2d 699, 702 (1993)). Here, the plaintiff has alleged, within the confines of the second amended complaint as a whole, a course of conduct by the defendants, collectively, that might, conceivably, sustain an emotional distress claim, at least against a Rule 12(b)(6) motion. However, she has provided no indication as to which of the individual defendants may have participated in the alleged wrongdoing, or in what way any of them might have been involved. Neither has she alleged that any

of the defendants *intended* to cause her emotional distress. Her claim is therefore not sufficiently well articulated to give the individual defendants "fair notice of what [her] claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). Had the plaintiff made clear in her earlier complaints that she wished to pursue an emotional distress claim, the defendants would have had the opportunity to explore, by way of a more timely motion to dismiss or for summary judgment, or through discovery, the basis for such a claim. That opportunity has passed. The claim must therefore be dismissed.[3]

Since the plaintiff's emotional distress claim cannot be sustained for the reasons given above, it is unnecessary to reach the question of whether any such claim would be time-barred.

### 10. Fraud: Failure to State a Claim

In paragraph 48(2) of her second amended complaint, the plaintiff alleges that:

By fraudulently holding out in numerous public declarations, that Plaintiff was an accredited member of, Director of and signor of documents for the various Art Therapy units, Defendants have committed fraud, more specifically, by continuing to list her name in college catalogues and at the same time as Defendants forced Plaintiff onto sick leave, changed her status from paid employee to unpaid employee and even after notifying Plaintiff that she was terminated, by listing Plaintiff in the University publications and continuing to indicate to accrediting associations that Plaintiff was still responsible for her Art Therapy programs after Defendants had removed her as Director and changed contracts over her signature without her knowledge or consent and by misusing Plaintiff's medical reports to force her onto sick leave so as to avoid any questions about why there were differential assignments to male and female professors in the

AED thus combining to deny Plaintiff the value of her person and professional reputation and deprive her of property in that her financial rewards were thus limited, all in contravention of her civil rights under the New York State Constitution.

Item 45, ¶ 48(2). Again, no such claim was included in her original or first amended complaints. The defendants characterize this claim as, in part at least, one for fraud, and have moved to dismiss on the grounds that the complaint fails to allege any of the necessary elements of a claim for fraud under New York law. Item 51, ¶ 19.

To prove fraud under New York common law, "a plaintiff must show (1) that there was a material, false representation, (2) made with the knowledge of its falsity, and (3) an intent to defraud (4) that the plaintiff reasonably relies upon, (5) causing the plaintiff damage." *Kregos v. Associated Press*, 3 F.3d 656, 665 (2d Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1056, 127 L.Ed.2d 376 (1994). Damages are limited to actual pecuniary loss, and the losses "must be the direct, immediate, and proximate result of the misrepresentation ... independent of other causes." *Id.*. Claims of fraud must be set forth with specificity in the pleadings: "[i]n all averments of fraud ... the circumstances ... shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b).

Here, the plaintiff has failed to set forth any claim of fraud with sufficient particularity to withstand the defendants' motion to dismiss. The allegations concerning the purported false representations are vague; the complaint contains no indication of which of the individual defendants participated in the allegedly fraudulent conduct, or in what way any of them might have been involved; there is no allegation of intent to defraud on the part of any defendant, or of reliance by the plaintiff; nor does the complaint describe

---

**3.** The court notes that in her brief in opposition to the defendants' Rule 12(b)(6) motion, and at oral argument, the plaintiff has defended against dismissal of the emotional distress claim by referring to conduct by the defendants that was not described or alluded to in the second amended

complaint—again without identifying with any clarity the individuals that might have been involved. The allegations contained only in her brief, or raised at oral argument, cannot form the basis of a ruling on the defendants' motion.

with any specificity in what way the plaintiff has suffered pecuniary loss as a direct, immediate, and proximate result of the whatever false representations may have been made. Again, had an allegation of fraud been made with specificity, at an earlier stage in the litigation, the defendants would have had the opportunity to investigate the basis for the claim in detail. It is now too late, and any fraud claim that might be founded on the allegations made in ¶ 48(2) of the second amended complaint must be dismissed.

### 11. New York Civil Rights Law § 51: Statute of Limitations

 In their brief in support of their motion to dismiss, the defendants point out that ¶ 48(2) of the second amended complaint could be construed as alleging a violation of New York Civil Rights Law § 51, which protects against the unauthorized use of, *inter alia,* a person's name.[4] They then argue that the claims set forth in ¶ 48(2) should not be so construed, and that, if they were, they would be time-barred under New York C.P.L.R. § 215(3), since they were first brought when the second amended complaint was filed on November 14, 1995, more than two years after the plaintiff's employment at SUNYCB was terminated. Item 51, pp. 19–20.

In response, the plaintiff acknowledges that in her second amended complaint, she set forth her claim for misuse of her name as one of fraud. Item 52, p. 23. However, she states that "at the suggestion of the Defendants, the Plaintiff would herein allege that her claim is also that the Defendants used her name without her consent and improperly for gain in violation of Section 51 of the New York Civil Rights Law." *Id.* at 23–24. She then argues that the claim was encompassed by the allegations made in her original complaint, and that the § 51 violation is

continuing, since she is currently listed, wrongly, as a SUNYCB faculty member in the 1994–96 edition of the college's Graduate Catalog. *Id.* at 24.

The original complaint made it clear that one of the plaintiff's many concerns in bringing this action was that SUNYCB had been misusing her name and professional status in promoting the Art Therapy Program:

> The College has ignored my ethical concerns about the advertizing of an apparently non-existent masters degree (7/31/86) and changed documents over my name without my knowledge or consent (3/11/85) and used my name and professional status without authorization over the title Director and sent out public information stating that I was one of the registered therapists teaching in the College's graduate art therapy program when, in fact, I had not been involved as a professor, advisor, supervisor, or committee member in this program since I officially went on sabbatical leave on January 16, 1986.

Item 1, p. 4. Very similar concerns over the improper use of her name and reputation for purposes of promoting the Art Therapy Program were expressed in her first amended complaint (although at that time under the general heading of a claim under 42 U.S.C. § 1983). Item 15, ¶ 45. At that time, the claims were plainly directed against the defendants as a whole, and not just against the State defendants SUNY and SUNYCB. *Id.,* ¶¶ 43–45. It is clear that all of the defendants have been on notice of the plaintiff's allegations concerning the misuse of her name since, at the latest, June 1988, when the first amended complaint was filed. Their statute of limitations argument must therefore fail.

The questions of (1) whether the plaintiff's "misuse of name" allegations state cognizable

---

4. New York Civil Rights Law, § 51, provides in pertinent part that:
 > Any person whose name ... is used within this state for advertising purposes or for purposes of trade without the written consent first obtained as [provided in § 50 of the Civil Rights Law] may maintain an equitable action in the supreme court of this state against the person, firm or corporation so using his name ... to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use and if the defendant shall have knowingly used such person's name ... in such manner as is forbidden or declared to be unlawful by section fifty of this article, the jury, in its discretion, may award exemplary damages.

claims against any of the State or individual defendants under § 51, and (2) whether, under the Eleventh Amendment, this court has jurisdiction to adjudicate such claims against SUNY, SUNYCB, or the individual defendants acting in their official capacities, have not yet been briefed by the parties. Therefore, the court is not prepared to grant the defendants' request that all of the plaintiff's claims that might be construed as claims under § 51 be dismissed at this time.[5]

## CONCLUSION

For the reasons given above, the defendants' motion to dismiss (Item 50) is granted insofar as it seeks dismissal of:

(1) all claims under Title VII and the ADEA against the individual defendants in their individual and official capacities;

(2) all claims under the HRL against SUNY, SUNYCB, the individual defendants in their official capacities, and defendant Feal in her personal capacity;

(3) all claims under 42 U.S.C. § 1983 against SUNY and SUNYCB, and all claims under § 1983 seeking retrospective relief against the individual defendants in the official capacities;

(4) all claims based upon allegations of breach of contract, intentional infliction of emotional distress, and fraud.

The defendants' motion to dismiss is denied insofar as it seeks dismissal of:

(1) claims under 42 U.S.C. § 1983 against the individual defendants in their personal capacities, and claims seeking prospective relief under § 1983 against those defendants in their official capacities;

(2) claims under the HRL against the individual defendants in their personal capacities, with the exception of the claim under the HRL against defendant Feal;

(3) claims under New York Civil Rights Law § 51 against all defendants.

A review of the second amended complaint indicates that besides the latter three sets of claims, the only other claims remaining are the claims under Title VII and the ADEA against SUNY and SUNYCB. The plaintiff may proceed on all of her remaining claims. However, both the plaintiff and the defendants will make submissions to the court on the question of the court's jurisdiction to adjudicate the plaintiff's claims against the State and individual defendants under New York Civil Rights Law § 51, by April 19, 1996.

So ordered.

**5.** The court is not unsympathetic to the defendants' position that since the plaintiff did not, in any of her complaints, identify her "misuse of name" claims as arising under § 51, they should not now be so construed. However, a "district court has a duty to consider whether a plaintiff's allegations could provide relief under *any* available legal theory," *Sidney S. Arst Co. v. Pipefitters*

*Welfare Educ. Fund,* 25 F.3d 417, 421 (7th Cir. 1994), and a claim should not be dismissed on a Rule 12(b)(6) motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley v. Gibson,* 355 U.S. at 45–46, 78 S.Ct. at 102.