Robert W. **PAZAMICKAS**, Plaintiff,

v.

**NEW YORK STATE OFFICE OF MENTAL RETARDATION AND DEVELOPMENT DISABILITIES**, Defendant.

No. 96–CV–532.

United States District Court,
N.D. New York.

May 28, 1997.

---

Office of Seth Buchman (Seth Buchman, of counsel), Three Mile Bay, NY, for Plaintiff.

Dennis C. Vacco, Attorney General of the State of New York (Judith A. Avent, of counsel), Albany, NY, for Defendant.

## MEMORANDUM, DECISION & ORDER

McAVOY, Chief Judge.

Plaintiff Robert Pazamickas brought this action for sexual harassment and retaliation in employment pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the New York Human Rights Law, Executive Law § 290, *et seq.* ("HRL"). Plaintiff also brought a claim for intentional infliction of emotional distress. Defendant now moves for judgment on the pleadings, pursuant to Fed.R.Civ.P. 12(c), 12(b)(1) and 12(b)(6). Plaintiff opposes the motion, and cross-moves for leave to amend the Complaint to add new claims and new defendants.

## I. BACKGROUND

### A. Facts

The following are the facts as alleged in the Complaint.

Plaintiff began work at the Sunmount Development Disabilities Services Office of defendant New York State Office of Mental Retardation and Developmental Disabilities ("OMRDD") in April of 1990. Plaintiff is employed as a social worker and Case Management Supervisor.

On October 19, 1993, plaintiff's supervisor, Theresa Mahoney, asked plaintiff to attend a meeting with a co-worker, Jane McCabe. During this meeting, Mahoney confronted plaintiff with sexually explicit material depicting male genitalia and asked if plaintiff had sent the material to McCabe. After posing the question, Mahoney and McCabe exchanged glances and smiles, creating an environment that plaintiff alleges was demeaning, humiliating and insulting.

Two days later, plaintiff filed complaints with defendant and his union.[1] After filing the complaints, plaintiff alleges that defendant began to take the following retaliatory

1. In June of 1994, he filed a charge with the New York State Division of Human Rights ("DHR").

actions against him: (1) on November 11, 1993, Mahoney arbitrarily denied plaintiff's request for time off at Thanksgiving; (2) after sustaining an injury on March 25, 1994 requiring plaintiff to take a leave of absence from work, he requested that his position be held pending his return. This request was denied; (3) on May 30, 1995, plaintiff was unfairly subjected to formal counseling, and was threatened with having a seventy-four page reprimand placed in his personnel file; the reprimand later was reduced to four pages and placed in his file.

### B.  Procedural History

On April 1, 1996, plaintiff filed his Complaint alleging: (1) sexual harassment in violation of Title VII and the HRL; (2) retaliation in violation of Title VII and the HRL; and (3) intentional infliction of emotional distress. On December 10, 1996, defendant moved to dismiss plaintiff's complaint. Plaintiff has cross moved for leave to amend the Complaint.

## II.  Discussion

### A.  Defendant's Motion for Judgment on the Pleadings

#### 1.  Standard Under Fed.R.Civ.P. 12(c)/ 12(b)(6)

■ Defendant moves for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), 12(b)(1) and 12(b)(6), based upon lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted. (Def. Notice of Motion at 1). Where a motion for judgment on the pleadings is based on the defense of failure to state a claim upon which relief may be granted, *see* Fed. R.Civ.P. 12(h)(2), the Court will treat the motion as one to dismiss. *See National Association of Pharmaceutical Manufacturers, Inc. v. Ayerst Laboratories,* 850 F.2d 904, 909 n. 2 (2d Cir.1988).

"When deciding a motion to dismiss an action for failure to state a claim upon which relief may be granted, the court 'must accept the material facts alleged in the complaint as

true.'" *Staron v. McDonald's Corp.,* 51 F.3d 353, 355 (2d Cir.1995) (quoting *Cohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir.1994)). The court should not dismiss on a Rule 12(b)(6) motion unless it appears clear that the plaintiff cannot in any way establish a set of facts to sustain his claims which would permit relief. *Hughes v. Rowe,* 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980); *Bass v. Jackson,* 790 F.2d 260, 262 (2d Cir.1986).

It is in light of these considerations that plaintiff's Complaint is examined.[2]

#### 2.  Sexual Harassment

■ Defendant first argues that plaintiff's claims of sexual harassment must be dismissed. Since the same legal standards apply to sexual harassment claims under Title VII and the HRL, the Court's analysis applies to both statutes. *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1304 n. 4 (2d Cir.1995) (citing *Miller Brewing Co. v. State Div. of Human Rights,* 66 N.Y.2d 937, 498 N.Y.S.2d 776, 489 N.E.2d 745 (1985)).

Plaintiff's Complaint may be construed as alleging hostile work environment sexual harassment. To establish such a claim, plaintiff must show: "(1) that h[is] workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of h[is] work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Murray v. New York University Collège of Dentistry,* 57 F.3d 243, 249 (2d Cir.1995).

■ As to the first prong of this analysis, "[a]ctionable sexual harassment must consist of more than isolated incidents or casual comments that express harassment or hostility." *Babcock v. Frank,* 783 F.Supp. 800, 808 (S.D.N.Y.1992). Rather, "[t]he harassment at issue must be 'sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.'" *Kotcher v. Rosa and Sullivan Appliance Center, Inc.,* 957 F.2d 59, 63 (2d Cir.1992) (quoting *Meritor Savings Bank*

---

**2.**  Since plaintiff has cross-moved for leave to file an Amended Complaint, the Court, in the interests of efficiency, will direct its analysis where

necessary to the allegations contained in the proposed Amended Complaint.

*FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986)). Moreover, the employee must subjectively perceive the environment to be abusive, and the environment must be one that a reasonable person would find hostile or abusive. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 22, 114 S.Ct. 367, 370–71, 126 L.Ed.2d 295 (1993).

■ Plaintiff's only allegation of sexual harassment is the incident in which Mahoney and McCabe confronted him with the obscene picture. This allegation clearly is insufficient to state a claim for hostile work environment sexual harassment. As a general rule, "isolated acts or occasional episodes will not merit relief." *Kotcher,* 957 F.2d at 63 (citing *Carrero v. New York City Housing Authority,* 890 F.2d 569, 577 (2d Cir.1989)). Of course, allegations of a single incident involving physical or sexual assault may be sufficient, *see Tomka,* 66 F.3d at 1305, but plaintiff's claim in the present case involves no such allegations. At best, plaintiff's claim is premised upon harassment which was neither verbal nor physical (*see* Compl. ¶ 13) ("Throughout this meeting, [ ] Mahoney and [ ] McCabe . . . exchanged glances and smiles with one another, which further added to the belittling environment"), and which occurred on a single occasion. Based upon these allegations, "no reasonable fact finder could conclude that the incident created a hostile or abusive work environment." *Galvez v. Means,* 1996 WL 487962 at *2 (S.D.N.Y.1996) (offensive comments uttered during one isolated incident insufficient to state a claim for hostile work environment sexual harassment).

■ Moreover, plaintiff's proposed amendments to his sexual harassment allega-

tions are futile. Plaintiff alleges that following the October 19, 1993 meeting, McCabe and Mahoney discussed the meeting with their co-workers. (Am. Compl. ¶ 15). He goes on to allege that "[t]he presentation of the drawing . . . and the accusation that he was the author became a topic of discussion in the office subjecting plaintiff to further and widespread humiliation . . .". (*Id.*), and that the incident was discussed at other meetings with plaintiff's co-workers. These vague, generalized allegations, betraying not a hint of the severity or pervasiveness necessary for actionable sexual harassment, do nothing to revive plaintiff's hostile work environment claim. Therefore, defendant's motion for judgment on the pleadings is granted as to plaintiff's claim of sexual harassment.[3]

### 3. Retaliation

■ Plaintiff also alleges that retaliatory action was taken against him for complaining of the alleged sexual harassment.[4] To state a *prima facie* claim of retaliation, plaintiff must establish: 1) that he participated in a protected activity known to defendant; 2) that his employer took adverse employment action against him; and 3) that there exists a causal link between the protected activity and the adverse employment action. *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 714 (2d Cir.1996); *Kotcher,* 957 F.2d at 64.

■ Plaintiff alleges that on October 21, 1993, he filed complaints with his employer and his union, apparently regarding the confrontation with Mahoney and McCabe. Such an allegation is sufficient to establish the first element of the *prima facie* case. *Tomka,* 66 F.3d at 1308; *Kotcher,* 957 F.2d

**3.** Plaintiff also makes vague and incomplete references in the Complaint to Mahoney being "discriminatory towards men in general . . . [as] indicated by comments in which she has expressed the opinion that she hopes various employment openings are filled by women." Insofar as this allegation is an attempt to plead sex discrimination under either Title VII or the HRL, it is woefully inadequate. Plaintiff does not allege that such comments were carried out or resulted in any adverse employment action taken *against him.* "Just as in the tort field, where 'negligence in the air' is not enough to fasten liability on a defendant, so in a Title VII case discrimination

in general does not entitle an individual to specific relief." *Negussey v. Syracuse University,* 1997 WL 141679 at *17 (N.D.N.Y.1997) (Munson, J.).

**4.** Since retaliation claims, like sexual harassment claims, are subject to the same standard of proof under Title VII and the HRL, they too are addressed simultaneously. *Reed v. A.W. Lawrence & Co., Inc.,* 95 F.3d 1170, 1177 (2d Cir.1996); *Yukoweic v. Intern. Bus. Machines,* 228 A.D.2d 775, 643 N.Y.S.2d 747, 748 n. 1 (3d Dep't), *leave to appeal denied,* 88 N.Y.2d 816, 651 N.Y.S.2d 17, 673 N.E.2d 1244 (1996).

at 65. Furthermore, the denial of plaintiff's request for time off at Thanksgiving (Compl. ¶ 16), the denial of his request that his position be held pending his return (Compl. ¶ 18), and the placement of the reprimand in his personnel file (Compl. ¶ 19) each qualify, for the purposes of this motion, as adverse employment actions.[5] *See Dortz v. City of New York,* 904 F.Supp. 127, 155 (S.D.N.Y.1995) (adverse employment action is one which "affected the terms, privileges, duration, or conditions of [plaintiff's] employment"). Finally, plaintiff sufficiently has alleged that such actions were taken in retaliation for his filing of the complaints. (Compl. ¶¶ 16, 18, 19). Thus, defendant's motion for judgment on the pleadings is denied as to plaintiff's retaliation claim.[6]

### 4. Rehabilitation Act/Americans With Disabilities Act

In his proposed Amended Complaint, plaintiff adds claims under the Rehabilitation Act of 1973, 29 U.S.C.A. § 701 *et seq.,* and the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C.A. § 12101 *et seq.* To state a *prima facie* claim under either of these acts, plaintiff must allege

(1) that the employer is subject to the statute under which the claim is brought, (2) that she is an individual with a disability within the meaning of the statute in question, (3) that, with or without reasonable accommodation, she could perform the essential functions of the job, and (4) that the employer had notice of the plaintiff's disability and failed to provide such accommodation.

*Lyons v. Legal Aid Society,* 68 F.3d 1512, 1515 (2d Cir.1995). *See also Henrietta D. v. Giuliani,* 1996 WL 633382 at *6 (E.D.N.Y. 1996) ("As a result of the overlap between the ADA and the Rehabilitation Act, their 'substantive standards for determining liability are the same.'") (quoting *McDonald v. Commonwealth of Pennsylvania,* 62 F.3d 92, 95 (3d Cir.1995)).

Plaintiff first alleges that he is a qualified individual with a disability [7] "in that he has lost the mobility of his left arm and is in constant extreme pain yet he can still perform the essential functions of his job." (Am. Compl. ¶ 10). He further alleges that this disability has a substantial impact on his "major life activity" of working.[8] (Am.

5. Plaintiff's generalized references to unspecified instances of "increasing and persistent criticism," particularly by Mahoney, are insufficient to qualify as adverse employment actions.

6. In his Amended Complaint, plaintiff also alleges that he was reassigned to another work location in retaliation for filing the present civil action. (Am. Compl. ¶ 26). Since that reassignment allegedly required an additional 16 hour per week commute, this allegation suffices as an adverse employment action taken in retaliation for a protected activity.

Plaintiff also alleges that he was removed by defendant from his position as a board member of the Regional Quality Assurance Advisory Board. (*Id.* ¶ 27). He in no way alleges, however, that such action was retaliatory in nature. Thus, leave to amend with respect to this allegation will be denied.

7. "Disability" under the ADA is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(a).

8. The ADA itself does not define "major life activities." Rather, that definition and several others are provided in the regulations implementing the equal employment provisions of the ADA. *See* 29 C.F.R. Pt. 1630; 42 U.S.C. § 12116 (requiring

EEOC to issue regulations to implement ADA). Under those regulations, "major life activities" include caring for oneself, performing manual tasks, speaking, hearing, walking, learning, breathing, and working. 29 C.F.R. § 1630.2(i).

With respect to the major life activity of *working,* the phrase "substantially limits" is defined as

significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. *The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.* 29 C.F.R. § 1630.2(j)(3)(I) (emphasis added). A "class of jobs" is further defined as "[t]he job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment." 29 C.F.R. § 1630.2(j)(3)(ii)(B); *MacDonald v. Delta Air Lines, Inc.,* 94 F.3d 1437, 1444–45 (10th Cir. 1996). A "broad range of jobs in various classes" is defined as "[t]he job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge,

Compl. Ex. D). Defendant argues that plaintiff is not disabled within the meaning of the ADA since "his difficulty with his left elbow does not ... substantially restrict or limit plaintiff's general ability to secure employment." That is a matter of proof, however. Thus, while "plaintiff must ultimately prove that his disability is covered within the meaning of the ADA, the allegations in the Complaint are sufficient to survive defendant's motion to dismiss." *Muller v. Costello*, 1996 WL 191977 at *4 (N.D.N.Y.1996) (Scullin, J.).

Plaintiff additionally alleges that after he requested reasonable accommodation relating to driving, which aggravated his disability, defendant "reassigned plaintiff to a work location ... requiring him to commute an additional 16 hours per week so as to cause plaintiff to reaggravate [sic] his disabled arm." (Am. Compl. ¶ 23). Plaintiff's request for accommodations is contained in Exhibit F of his Amended Complaint; he alleges that these requests were refused. (Am. Compl. ¶¶ 28, 29). These allegations are sufficient to withstand defendant's motion.[9]

■ Defendant's arguments that such accommodations have been provided, that defendant need not provide every accommodation plaintiff demands, and that plaintiff's dislike of the additional 16 hour per week commute does not amount to a failure to accommodate, while perfectly valid, are more appropriate on a motion for summary judgment. "Whether a particular modification is 'reasonable' involves fact-specific, case-by-case inquiry that considers, among other factors, the effectiveness of the modification in light of the nature of the disability in question and the cost to the organization that would implement it." *Staron v. McDonald's Corp.*, 51 F.3d 353, 355 (2d Cir.1995).

For all of these reasons, the motion for judgment on the pleadings as to the claims

under the Rehabilitation Act and the ADA is denied.

## 5. The State Law Claims

■ Defendant argues that the Eleventh Amendment renders this Court without subject matter jurisdiction to hear plaintiff's statutory claims under the HRL, and the common law claims for intentional infliction of emotional distress, *prima facie* tort and defamation.[10]

The Eleventh Amendment, as interpreted by the Supreme Court, bars suits against States by their own citizens in federal court in the absence of waiver by the state or abrogation by Congress. *See Welch v. Texas Department of Highways and Public Transportation*, 483 U.S. 468, 472, 107 S.Ct. 2941, 2945, 97 L.Ed.2d 389 (1987); *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114 (1985); *Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978) (per curiam ). State waiver will be found "only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.' " *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (quoting *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909)).

Nothing in the HRL provides any basis for finding that New York State has waived Eleventh Amendment immunity thereunder. *Jungels v. State University College of New York*, 922 F.Supp. 779, 784 (W.D.N.Y.1996), *aff'd*, 112 F.3d 504, 1997 WL 219065 (2nd Cir.1997); *accord, Moche v. City University of New York*, 781 F.Supp. 160, 167–69 (E.D.N.Y.1992), *aff'd*, 999 F.2d 538 (2d Cir. 1993); *Cassells v. University Hospital at Stony Brook*, 740 F.Supp. 143, 147–48 (E.D.N.Y.1990). Thus, plaintiff's HRL

---

skills or abilities, within the geographical area, from which the individual is also disqualified because of the impairment." 29 C.F.R. § 1630.2(j)(3)(ii)(C); *MacDonald*, 94 F.3d at 1444–45.

9. As required under the Rehabilitation Act, plaintiff alleges that defendant receives federal funds. (Am. Compl. ¶ 6a).

10. A claim that the court lacks subject matter jurisdiction may be raised at any time, or by the court itself, *sua sponte. Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 107 (2d Cir.1997).

claims against defendant, a state agency, are barred by the Eleventh Amendment, as are plaintiff's common law claims. *Jungels,* 922 F.Supp. at 784 (citing *Mascheroni v. Board of Regents of the University of California,* 28 F.3d 1554, 1557–60 (10th Cir.1994)).

Plaintiff half-heartedly argues that the New York Court of Appeals' recent decision in *Brown v. New York,* 89 N.Y.2d 172, 652 N.Y.S.2d 223, 674 N.E.2d 1129 (1996), effected an implied waiver of New York's Eleventh Amendment immunity. *Brown* is inapposite, however, for two reasons. First, Brown addressed only the jurisdiction of the Court of Claims with regard to certain constitutional torts. *Id.* 652 N.Y.S.2d at 230, 674 N.E.2d at 1136. Second, the decision dealt only with violations of the New York State *Constitution. See id.* 652 N.Y.S.2d at 232–33, 674 N.E.2d at 1138–39 ("we conclude that a cause of action to recover damages may be asserted against the State for violation of the Equal Protection and Search and Seizure Clauses of the *State Constitution.*") (emphasis added). Plaintiff brings no state constitutional claims, and thus his reliance upon *Brown* is misplaced.

Since the Court is without jurisdiction to hear plaintiff's state law claims, those claims are dismissed.

### 6. Individual Defendants

Plaintiff seeks to leave to add a number of individuals as defendants. As plaintiff concedes, however, such a motion is untimely. Under the Uniform Pre–Trial Scheduling Order, the deadline for a motion to join any person as a party was November 15, 1996. Moreover, the Scheduling Order explicitly stated that

> THE DEADLINES SET IN THIS SCHEDULING ORDER ARE FIRM AND WILL NOT BE EXTENDED, EVEN BY STIPULATION OF THE PARTIES, ABSENT GOOD CAUSE.

Plaintiff filed his cross-motion seeking to join the individual defendants on November 25, 1996. Plaintiff made no effort to seek an extension, nor has he shown good cause why such motion should be considered in spite of its untimeliness. For all of these reasons, plaintiff's motion for leave to add additional defendants is denied.

### III. Conclusion

For the foregoing reasons, it is hereby

ORDERED, that defendant's motion for judgment on the pleadings is GRANTED as to all claims with the exception of plaintiff's retaliation claim under Title VII; and it is further

ORDERED, that plaintiff is granted ten days to file an Amended Complaint to add claims under the Rehabilitation Act and the ADA, in accordance with the terms of this decision.

**IT IS SO ORDERED.**