Odell B. DAY, Plaintiff,

v.

Edward J. DERWINSKI, Secretary of Veterans Affairs, Defendant.

No. 88 Civ. 3947(CES).

United States District Court,
S.D. New York.

July 17, 1991.

Paul, Weiss, Rifkind, Wharton & Garrison by Rick B. Antonoff, New York City, for plaintiff.

U.S. Atty. by Victor Olds, Asst. U.S. Atty., New York City, for defendant.

## MEMORANDUM DECISION

STEWART, District Judge:

Plaintiff Odell B. Day ("Mrs. Day") brings this employment discrimination case under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1988), and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621–34 (1985), against Edward J. Derwinski, Secretary of Veterans Affairs.[1] The plaintiff, a black woman, was sixty-two years old when she was reassigned from her job as a medical transcriber in the Radiation Thera-

py Department of the Veterans Administration Bronx Medical Center ("the hospital"). She alleges the reassignment was motivated by race and age discrimination. She seeks damages for lost wages in the amount of $70,000., an undetermined amount in damages for lost reputation, attorneys' fees totalling approximately $65,-000., and a written apology.

A non-jury trial of three days was held. The following constitutes our findings of fact and conclusions of law as mandated by Rule 52 of the Federal Rules of Civil Procedure.

## FACTS

Mrs. Day began working at the Bronx Veterans Administration Medical Center on January 20, 1944. In 1954 she started working in the Radiation Therapy Service. Her job title was Medical Clerk/Typing, Grade 5, Step 10, at a salary of $18,070. Deft's Exh. N. As a medical transcriber Mrs. Day typed the doctors' dictated notes from audio tapes. During her employment at Radiation Therapy Mrs. Day had achieved a certain status and received certain privileges, including a private office with the title "Research Coordinator" on her door. Tr. 107. As research coordinator she coordinated everything between the patient and the doctors. Tr. 11. It is undisputed that Mrs. Day's performance was not only satisfactory but was rated "excellent, outstanding, or far exceeded" at various times in her employment, including the period just prior to her reassignment. Tr. 14.

Mrs. Day's supervisor was Dr. Bernard Roswit, the Chief of Radiation Therapy, until his retirement in 1983. Dr. Roswit had been an active member of the cooperative cancer studies that the VA had conducted, including preparing papers and talks.[2] Tr. 162. After Roswit's retirement Dr. Hee Kyung Song became the Acting

1. By a Stipulation and Order dated April 9, 1991, the parties amended the caption to substitute Edward J. Derwinski, Secretary of Veterans Affairs, as the defendant in this case. On March 15, 1989 the Veterans Administration (named previously as the defendant) became the Department of Veterans Affairs and its Chief Operating Officer became the Secretary of Veterans Affairs.

2. These cooperative cancer studies were not conducted in Radiation Therapy after Roswit's departure. Tr. 162.

Chief of Radiation Therapy and plaintiff's supervisor.

On August 31, 1984 Mrs. Day received a memorandum signed by Dr. Julius Wolf, the hospital's Chief of Staff, informing her that she was being reassigned to Nuclear Medicine Service effective September 16, 1984. The new position was the same job title, at the same grade and step and same salary. Tr. 173, Deft's Exh. N. At some time prior to the reassignment notice, Dr. Song had informed Dr. Wolf that a medical clerk was no longer needed in Radiation Therapy because of a decreasing workload. Tr. 161. Dr. Song wrote a memorandum under Dr. Wolf's signature to the Position Management Committee requesting that the position of medical clerk be abolished. Tr. 162–63. Dr. Wolf approved the request and forwarded it to the Position Management Committee. Tr. 163. At a meeting on August 17, 1984, the Position Management Committee granted the request, recommending to the director of the hospital that the position be abolished, and that Medical Administration Service absorb the transcription workload. Tr. 164, Pltf's Exh. 11. The director of the hospital approved the recommendation. *Id.* In consultation with Dr. Wolf, the personnel office made arrangements for Mrs. Day's reassignment to a new position in the Nuclear Medicine Service. Tr. 169–70.

Upon receiving the reassignment notice, Mrs. Day immediately went to see Dr. Wolf for an explanation for her sudden transfer. Tr. 17, 171. Mrs. Day testified that she was extremely upset, "hurt" and "humiliated" at not being notified in advance of her reassignment, as if she had "done something untoward." [3] Tr. 21, 54, 69. According to Mrs. Day, Dr. Wolf said he knew nothing, except that "someone" gave him a memo and he signed it. Tr. 17. Dr. Wolf testified that he indicated to Mrs. Day that he felt the position was not needed in Radiation Therapy and that there was a vacancy to be filled in Nuclear Medicine. Tr. 172. He suggested that Mrs. Day could either take this job or a lesser job. Tr. 17. Dr. Wolf then suggested that she speak to someone in personnel. *Id.*

Mrs. Day spoke to Mr. Thorne in personnel, who informed her that the memorandum requesting the abolition of her position originated from Dr. Song, the Acting Chief of Radiation Therapy. Tr. 17–18. Mrs. Day then approached Dr. Song, who initially denied any knowledge of the transfer and reassignment. Tr. 18. Dr. Song then suggested that "maybe it was that memo you wrote on Ms. May." [4] *Id.*

Mrs. Day also sought assistance from the union. Tr. 21–22. Unsatisfied, she then sought assistance from the Equal Employment Opportunity ("EEO") office of the hospital. *Id.* An EEO counselor, Mr. Bill Dawson, was assigned to conduct "informal counseling" in response to Mrs. Day's complaint. Dawson interviewed Dr. Wolf and Dr. Song and wrote a report dated October 26, 1984. In his interview of Dr. Song on September 14, 1984, Dawson reported that Dr. Song cited several exam-

---

**3.** Mrs. Day testified that the usual procedure for transfer/reassignment was that someone would "talk to the person," presumably in advance of the action being taken. The person would then be interviewed by someone in the department where they might be reassigned. Tr. 15. There is no support in the record that such a procedure existed or was followed with regard to other persons who were reassigned. Dr. Wolf testified that employees were given a memo notifying them of their transfer two weeks in advance of the effective date. Tr. 171. Dr. Zev Chayes, chief of the Nuclear Medicine Service, testified that the usual procedure was that the personnel department would notify him that a person was being assigned to him to fill a vacancy. Pltf's Exh. 15 at 14. After the person came, it was left to him to establish the person's suita-

bility for the position, which was mostly done "post facto." *Id.* at 28.

**4.** In July, 1984, just one month before Mrs. Day's reassignment, she had a confrontation with Roberta May, the secretary and the timekeeper for Radiation Therapy. Apparently as Ms. May was coming down the hall engaged in conversation with someone else, Mrs. Day tried to inform Ms. May that she needed the afternoon off to attend a funeral. Tr. 19. May immediately exploded, in the presence of patients, saying that Mrs. Day had not called her by name. *Id.* Dr. Song witnessed this event. Nevertheless, Mrs. Day wrote a memo because she thought Dr. Song "should do something about such an action as that in front of the patients." Tr. 20.

ples of problems that she had experienced with the plaintiff. Dr. Song said Mrs. Day refused to help out with the reception clerk's duties or to fill in for the secretary when she was absent. According to Dawson, Mrs. Day denied that she was ever asked to perform these tasks.

Further, Dr. Song said Mrs. Day "walked out of a meeting" with Dr. Song and Ms. May when the three were discussing the confrontation between Mrs. Day and Ms. May in July. Pltf's Exh. 7. According to Dawson's report, Mrs. Day admitted she "excuse[d] herself from this meeting," because she felt she was now "the one being accused," and that Ms. May had been "informed" by Dr. Song "how to respond to the situation." *Id.* Dawson's report supports Mrs. Day's testimony that Dr. Song referred to the confrontation with Ms. May as a reason for Mrs. Day's reassignment.[5] *Id.*

Sixty percent of plaintiff's work in Radiation Therapy was medical transcription, with the remaining time spent working directly with patients and their kin. Tr. 12, 33–34. Estimates of the amount of time that Mrs. Day spent doing medical transcription ranged from less than one hour a day to two and half to three hours a day. Tr. 129, Pltf's Exh. 11, Deft's Exh. G. Mrs. Day testified that she spent "most" of her time on transcription, approximately sixty percent. Tr. 33–34, 44. Calculated on an eight-hour work day, that would be four and a half hours a day.

The evidence showed that the number of new cases in Radiation Therapy had been declining gradually since 1980. Deft's Exh. W. There was no documentation presented regarding the number of cases carried over from previous years, nor any information regarding other measures of the department's workload.

Meanwhile, Mrs. Day reported to the Nuclear Medicine Service for her new assignment. She worked there satisfactorily until her retirement in 1986, doing general secretarial work, assembling charts, and following purchase orders. Pltf's Exh. 15 at 10. She did no transcribing. Tr. 35. Mrs. Day gave the following reasons for her resignation from the hospital in 1986: "I was spent. I was worn out. I was hurt ... Because of the way I was done.... the way I was removed from my job as being irresponsible, as being not needed, not wanted because of who I was. That is all." Tr. 35–36.

Mrs. Day filed a formal discrimination complaint with the hospital's EEO office. Deft's Exh. H. On May 29, 1986 Investigator Clarence Bell concluded that Mrs. Day had been treated "unfairly and inhumanely" but there was no clear evidence that the treatment was based on her age or on racial animus. Deft's Exh. F. In a Notice of Proposed Disposition of Discrimination Complaint, dated September 2, 1986, the Veterans Administration apologized for the lack of courtesy and "unceremonious" treatment Mrs. Day was given, acknowledging her "exemplary" performance over many years. Deft's Exh. E. Nevertheless, they concluded that there was no unlawful discrimination. She pursued her complaint through the Equal Employment Opportunity Commission ("EEOC"), as required by regulation. 29 C.F.R. § 1613.214. Her complaint was rejected on the ground that the allegation failed to state a claim under 29 C.F.R. § 1613.212. She commenced this civil action in July 1988.

## DISCUSSION

Discriminatory or disparate treatment in violation of Title VII occurs where "[t]he employer simply treats some people less favorably than others because of their race, color, religion, sex or national origin. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment." *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335–36 n. 15, 97 S.Ct. 1843, 1854–55 n. 15, 52 L.Ed.2d 396 (1977). In Title VII as well as ADEA

5. Dawson states, "Mrs. Day was told by Dr. Song later that the incident with Mrs. May was a direct cause of her removal from her position." Pltf's Exh. 7.

actions,[6] the plaintiff bears the burden of initially proving a *prima facie* case. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). A *prima facie* case of discriminatory treatment may be made out by the plaintiff's showing:

> (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 582, 98 S.Ct. 2943, 2952, 57 L.Ed.2d 957 (1978).

However, this standard is not inflexible, as "[t]he facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect in differing factual situations." *See Burdine*, 450 U.S. at 254 n. 6, 101 S.Ct. at 1094 n. 6 (quoting *McDonnell Douglas*, 411 U.S. at 802 n. 13, 93 S.Ct. at 1824). Establishment of the *prima facie* case creates a presumption that the employer unlawfully discriminated against the employee. *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094.

In the case at hand, plaintiff has to show that she belongs to the racial and protected age group, was performing her job satisfactorily, and despite that, was transferred to another job, and that after her transfer, her job duties were performed by a younger, white person.

Defendant argues that plaintiff has failed to make out a *prima facie* case of race or age discrimination because she suf-

fered no legally cognizable adverse action as a result of her reassignment to the Nuclear Medicine Service. We disagree. Defendant cites Mrs. Day's evasiveness on cross examination and minor inconsistencies in her testimony, none of which we find are of a magnitude to undermine the validity of her major allegations. Title VII and ADEA protect employees from employment decisions motivated by discriminatory actions affecting "terms, conditions or privileges" of employment. 42 U.S.C. § 2000e–2(a); 29 U.S.C. § 633(a). If an employee's transfer to a different job is motivated by race or age considerations, it is obviously a discriminatory action affecting terms or conditions of employment. *See, e.g., Jackson v. Shell Oil Co.*, 702 F.2d 197 (9th Cir.1983) (employer discriminated on basis of age when it refused to allow plaintiff to transfer to another position).

Second, defendant asserts that Dr. Song had nothing to do with plaintiff's reassignment. On the contrary, the evidence shows that Dr. Song initiated the process by which Mrs. Day's position was abolished. As a technical matter the reassignment to another department was carried out by the Personnel Department, but the reassignment was obviously necessitated solely by Dr. Song's request to Dr. Wolf that the position held by Mrs. Day be abolished.

Defendant also argues that plaintiff failed to satisfy the second element of a prima facie case which requires the plaintiff to prove the existence of a vacancy. The government argues that because the position held by Mrs. Day was abolished, there was no "vacancy." The government cites *Stanojev v. Ebasco Services, Inc.*, 643 F.2d 914 (2d Cir.1981), for the proposition that "elimination of position precludes demonstration of *prima facie* case." Defendant overgeneralizes the holding in *Stano-*

---

**6.** The respective burdens of proof under the ADEA are the same as under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1988). *See, e.g., Taggart v. Time, Inc.*, 924 F.2d 43, 45–46 (2d Cir.1991) (three-step analysis for Title VII cases in *McDonnell Douglas* also applies to ADEA actions). Thus, to make out a

*prima facie* case of age discrimination, plaintiff must show that (1) he belongs to the protected age group, (2) he applied for and was qualified for the position sought, (3) he was not hired despite his qualifications, and (4) the position was ultimately filled by a younger person. *Id.*

*jev.* The Second Circuit's holding relied on the fact that the plaintiff's position in that case was essentially created for him, so it was "ephemeral" to begin with, and it was eliminated upon his discharge. *See Stanojev,* 643 F.2d at 920. Thus, no inference of discrimination arose because there was no job for a younger person to perform when plaintiff was discharged. In the instant case, although the position held by Mrs. Day was abolished, the transcription duties continued to be performed by a younger person in the department, Ms. May. Accordingly, we find that Mrs. Day has satisfied the second element as well as the other elements of a *prima facie* case. Once a plaintiff has made out a *prima facie* case of individualized disparate treatment, the defendant then has a burden of production to articulate a legitimate, nondiscriminatory business reason for the actions alleged to be discriminatory. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094. The plaintiff must then prove by a preponderance of the evidence that the legitimate reason offered by the defendant was not its true reason but a pretext for discrimination. *Id.* 411 U.S. at 804, 93 S.Ct. at 1825. The burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093. The plaintiff may carry his burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence," but it remains at all times the plaintiff's burden. *Id.* at 256, 101 S.Ct. at 1095.

Defendant asserts that the reason for Mrs. Day's reassignment was a decrease in the need for transcription in the department, and that abolition of the position held by Mrs. Day was an exercise in legitimate management prerogative. The facts show that the decrease in transcription work was a major factor but not the sole reason for Mrs. Day's reassignment. There were conflicts between Mrs. Day and the secretary Ms. May. Mrs. Day chose not to participate in efforts to resolve those conflicts, choosing to leave in the middle of a meeting which she herself had requested to discuss the July confrontation between herself and Ms. May. Further, by plaintiff's own assessment, the transcription work amounted to four and a half hours a day at the most. The other duties related to coordination of research-related activities generated by Dr. Roswit had disappeared with Dr. Roswit's retirement. Thus, the evidence shows that Mrs. Day's workload consisted of no more than approximately a half day. An employer is not required to maintain a full-time position in such a circumstance. Further, the fact that Mrs. Day's transcription duties were adequately performed by the secretary, Ms. May, is further support for the defendant's contention that Mrs. Day's position was not needed in Radiation Therapy.

Plaintiff is not required to show that age was a *principal* factor, only that the reasons offered by appellee were not its only reasons and that age "made a difference." *Paolillo v. Dresser Industries, Inc.,* 865 F.2d 37, 40 (2d Cir.1989). *Accord, Hagelthorn v. Kennecott Corp.,* 710 F.2d 76, 82 (2d Cir.1983) (plaintiff not required to show that the reasons offered were false, but that they were not the only reasons and that age made a difference; there can be more than one determinative factor, but age must be a factor in the absence of which the plaintiff would not have been discharged); *Geller v. Markham,* 635 F.2d 1027, 1035 (2d Cir.1980) (where an employer acts out of mixed motives in discharging an employee, plaintiff must show that age was a causative or determinative factor, one that made a difference in deciding whether the plaintiff should be employed).

The evidence showed that neither age nor race "made a difference" in the decision to abolish Mrs. Day's position. The preponderance of the evidence supported defendant's assertion that the level of work in the Radiation Therapy did not warrant a full-time position for medical transcription and research coordination. Furthermore, there is no evidence that white or younger employees were treated any differently in

similar circumstances. Accordingly, we find that Mrs. Day's reassignment was due to lack of work and internal conflicts, and was not motivated by race or age considerations. The action taken by the management of the hospital seems to have been ill-conceived and lacking in due respect and appreciation for the many years of loyal and conscientious work performed by Mrs. Day in the Radiation Therapy Department, but it does not rise to the level of illegal discrimination.[7]

## CONCLUSION

We find that plaintiff has failed to establish that the reasons given for her reassignment were not legitimate and were a pretext for discrimination. We also find that defendant abolished the position held by plaintiff and reassigned her because they had good reason to conclude that a full-time position was not needed.

For the reasons stated, the complaint is dismissed.

SO ORDERED.

---

7. Having so ruled, we need not rule on defendant's assertion that plaintiff's constructive discharge claim is outside of this court's jurisdiction.